**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ANDREW SUTTON, | : | CIVIL ACTION NO. |
| BOP Reg # 16059-043, | : | 1:15-CV-58-RWS-JSA |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 1:11-CR-554-RWS-JSA-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
|     Respondent. | : | 28 U.S.C. § 2255 |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

Movant has filed a 28 U.S.C. § 2255 motion to vacate his federal conviction and 96-month term of imprisonment upon the entry of his guilty plea. (Doc. 28; *see* Doc. 9). Because, as discussed below, Movant cannot overcome the procedural bars to consideration of his claim that his plea was unknowing and involuntary and, by the same token, he has not shown that his appeal waiver is unenforceable, **IT IS RECOMMENDED** that his § 2255 motion be **DISMISSED**.

**I.   Procedural History**

On February 22, 2011 in Case No. 1-11-cr-67, a federal grand jury returned a three-count indictment against Movant, charging him with (1) distributing child pornography, (2) receiving it, and (3) possessing images of it. (Doc. 30 at 2; *see U.S. v. Sutton*, No. 1:11-cr-67 (N.D. Ga. Apr. 4, 2012), Doc. 1). On December 20, 2011 in

this case, No. 1:11-cr-554, the government filed an information charging Movant with one count of distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2), (b).  (Doc. 1).  Movant waived indictment (Doc. 3) and pled guilty (Docs. 4, 4-1), and the government agreed to dismiss the indictment against him (*see* Doc. 4-1 at 3), which it did after he was sentenced in this case (*see Sutton*, No. 1:11-cr-67, Docs. 40-41).

Movant entered into a written Guilty Plea and Plea Agreement that includes a Limited Waiver of Appeal:

> To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and *the right to collaterally attack his conviction and sentence in any postconviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255)* on any ground, except on the ground that his sentence is substantively unreasonable under Title 18, United States Code, Section 3553(a), and except that the Defendant may file a direct appeal of an upward departure or a variance from the sentencing guideline range as calculated by the district court. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 4-1 at 8 (emphasis added)).  Movant signed the Plea Agreement (*id.* at 10), and he then separately signed the following addendum:

> I have read the [information] against me and have discussed it with my attorney.  I understand the charge[] and the elements of [the] charge that the Government would have to prove to convict me at a trial.  I have

2

>  read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. *I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding.* No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission. I am fully satisfied with the representation provided to me by my attorney in this case.

(*Id.* at 11 (emphasis added)).

At his plea hearing, Movant, a medical doctor with significant advanced training (*see* Doc. 27 (Plea Hr'g Tr.) at 4), acknowledged the following:

1. he understood the trial rights he was willingly forfeiting by pleading guilty (*id.* at 4-7);

2. he understood his plea agreement, and he had received neither threats nor promises inducing him to plead guilty, other than the promises in the agreement itself (*id.* at 7-10);

3. he understood the elements of the crime to which he was pleading guilty and what the government would be required to prove to convict him:

   > First, the defendant knowingly distributed a visual depiction. Second, the visual depiction was shipped or transported in interstate commerce by any means including by a computer. Third, the production of that visual depiction

3

>involved the use of a minor engaged in sexually explicit conduct. And, finally, the defendant knew that at least one of the performers was a minor and knew that the visual depiction was of a minor engaged in sexually explicit conduct.

(*id.* at 10);

4. he had committed the crime to which he was pleading guilty[1] (*id.* at 10-14, 18-19), as the government outlined in pertinent part as follows:

>[During an online chat with a Detective Valley from Wisconsin, who was using the chat name Mom Emily of Two, Movant, using the chat name range74,] asked for naked photographs of Mom-Emily-of-Two's kids. During the session range74 sent Detective Valley several images of child pornography. Also, during the session range74 turned on his web cam and transmitted an image of himself. That image shows [Movant] at his home in Kennesaw, Georgia. . . . [Movant] sent 15 images, ten of which were suspected child pornography. The National Center for Missing and Exploited Children confirmed that one of those images contained an identified minor who had been a victim of that offense. . . .

---

[1] A person violates 18 U.S.C. § 2252(a)(2), Movant's crime of conviction, when he

>knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer or through the mails, if –
>(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>(B) such visual depiction is of such conduct; . . . .

4

> Police seized several computers and external hard drives from [Movant's] property. Suspected child pornography was found on two of [his] laptops and on two external storage devices. A subsequent forensic examination showed, among other things, that on or about September 23rd of 2009, [he] received and distributed an image of child pornography using Yahoo Chat. . . . [T]he difference between what we had been here before on the Indictment [in 1:11-cr-67] and the current Information is that for [Movant] to successfully plead guilty to the charge contained in the Information, he must admit he distributed an image of child pornography between on or about September 23 of 2009 and May 1st of 2010 knowing that at least one of those images showed a minor, that is, a person under the age of 18, engaged in sexually explicit conduct.

(*id.* at 11-13);

> [Movant admitted that he] did distribute by computer a depiction that involved at least one minor engaging in sexually explicit conduct and that [he] did that with knowledge of [] those facts.

(*id.* at 14);

5. he understood the penalty range for his crime of conviction (*id.* at 14-15);

6. he understood the effect of his appeal waiver and the appeal rights he was relinquishing (*id.* at 15-17); and

7. he was satisfied with his counsel's representation (*id.* at 18).

The Court accepted Movant's guilty plea as knowing and voluntary. (*Id.* at 19).

On March 20, 2012, the Court sentenced Movant to a 96-month term of

5

imprisonment, 12 months below the sentencing guideline range of 108 to 135 months. (Doc. 9; *see* Doc. 24 at 2). As the terms of his Plea Agreement allowed, Movant filed an appeal challenging the substantive reasonableness of his sentence. (*See* Doc. 4-1 at 8; Docs. 10, 24). On November 13, 2012, the Eleventh Circuit found Movant's arguments to be unpersuasive and denied his appeal. (Doc. 24 at 2). The court noted that Movant's "offense was particularly serious because his actions bordered on production of child pornography. He engaged in numerous online conversations with children and parents of minor children, encouraging them to engage in bizarre sexual acts and send him nude photographs." (*Id.* at 3).

In his § 2255 motion, filed more than two years later on January 7, 2015, Movant challenges the factual basis for his plea, relying on the Third Circuit's decision in *United States v. Husmann*, 765 F.3d 169 (3d Cir. 2014). He argues that the actions for which he was convicted no longer constitute distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and that his guilty plea was therefore unknowing and involuntary. (Doc. 28). The government responds that not only is Movant's claim procedurally defaulted and time-barred, but it also lacks merit. (Doc. 30).

**II.   Discussion**

   **A.   Procedural Default & Time Bar**

6

Movant acknowledges that by "appeal[ing] his sentence but not his plea, he has procedurally defaulted the unknowing and unintelligent plea claim he presents here[,]" "and perhaps more importantly, the [one-year] statute of limitations for habeas relief under 28 U.S.C. § 2255 has expired." (Doc. 28 at 15; *see* 28 U.S.C. § 2255(f)). Thus, he must establish cause and prejudice and/or his actual innocence to overcome these bars to his § 2255 claim. (Doc. 28 at 15); *see McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928, 1936 (2013) (noting that even if the limitations period has expired, "actual innocence, if proved, serves as a gateway through which a petitioner may pass," although "[t]he gateway should open only when a petition presents [strong] evidence of innocence" (internal quotations omitted)); *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (noting that to prevail on an actual innocence claim, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him").

Movant argues that because "*Husmann* is the first case in any federal circuit that narrows the statutory definition of 'distribution' in child pornography cases[,] the legal basis for" his § 2255 claim "was not reasonably available" when he pled guilty, and a claim of such novelty "can constitute cause for a procedural default, as it does here." (*Id.* at 15-16). He argues further that actual prejudice arises from the fact that, as *Husmann* shows, he is actually innocent of his crime of conviction, and he thus is

7

"serving a sentence for conduct that does not amount to a violation of the law with which he was charged." (*Id.* at 16). He also asserts that his actual innocence excuses the untimeliness of his § 2255 motion. (*Id.* at 16-17).

The government disagrees with the proposition that Movant has demonstrated cause for failing to raise a *Husmann*-type argument earlier, contending that the argument was not so novel at the time of Movant's guilty plea as to be effectively unavailable to him. (Doc. 30 at 9-12). The government also argues that, even so, Movant was not prejudiced by counsel's failure to raise the argument earlier because (1) the Third Circuit's ruling in "*Husmann* is not binding on this Court" (*id.* at 12); and (2) even if Movant had raised the argument previously and "this Court had afforded [*Husmann*] persuasive weight, [Movant's] conduct would still satisfy the elements of distribution. . . . [because] the undisputed evidence at sentencing show[s] that [he] sent a pornographic image to another user, [and] a reasonable jury could infer that the image was actually received by that user" (*id.* at 13).

The government argues that Movant "glosses over the critical difference between the P2P sharing program at issue in *Husmann* . . . and the Yahoo! Messenger program [he] used to send an image to another person." (*Id.* at 14). Movant's expert testified at his sentencing hearing that Movant's laptop computer "contained evidence

8

that he actually *did* transmit the pornographic image [at issue] to another: '[T]his particular image was actually sent.' " (*Id.* (quoting Doc. 17 (Sent. Hr'g. Tr.) at 79:4-5 (testimony of Tami Loehrs))).

Regarding Movant's assertion of actual innocence, the government argues that he

> simply cannot demonstrate that 'no reasonable juror' would have convicted him of distributing child pornography when he sent an unlawful image through Yahoo! Messenger because at least one jury *actually did* convict a defendant on identical facts even absent proof that a recipient opened, viewed, or downloaded the image; and that conviction held up to appellate scrutiny.

(*Id.* at 17 (citing *United States v. Breton*, 740 F.3d 1, 18 (1st Cir. 2014))).

As discussed below, the Court has considered Movant's claim that his guilty plea was unknowing and involuntary due to his actual innocence and concludes that the government has the better of the foregoing arguments.

### B.  The Guilty Plea and Appeal Waiver

Movant argues that "his plea was made unknowingly and involuntarily, rendering his conviction constitutionally invalid[,]" because he "entered his plea without understanding the true nature of the charge against him – that the act of 'distribution' required evidence that the illicit image was actually received by another

9

person – and without realizing that his conduct does not actually fall within the charge." (Doc. 28 at 13-14).

"A guilty plea is knowing and voluntary if the defendant entered the plea without coercion and with the understanding of the nature of the charges and the consequences of the plea." *United States v. Speight*, 454 Fed. Appx. 785, 787 (11th Cir. 2011). Likewise, "[i]t is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily." *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005) (stating that "for a sentence-appeal waiver to be enforceable, the government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver" (internal quotations omitted)); *see Medina v. United States*, 597 Fed. Appx. 583, 586 (11th Cir. 2015) (same) (citing *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008)).

But, in a case upon which Movant relies (*see* Doc. 28 at 18), the Fifth Circuit has stated that "[e]ven valid [appeal] waivers do not bar a claim that the factual basis is insufficient to support the plea." *United States v. Hildenbrand*, 527 F.3d 466, 474 (5th Cir. 2008) (noting, however, that "if the factual basis is found to be sufficient to

10

support the plea, *then the plea agreement can be upheld* and the waiver of appeal provision would bar any additional arguments raised on appeal" (emphasis added)). The Eleventh Circuit has cited *Hildenbrand* with approval in several unpublished opinions. *See United States v. Puentes-Hurtado*, No. 13-12770, 2015 U.S. App. LEXIS 12647, at *10 (11th Cir. July 22, 2015) ("[A]n appeal waiver does not bar a Rule 11 claim that there is an insufficient factual basis to support a guilty plea."); *United States v. Bentley*, 571 Fed. Appx. 760, 763 n.4 (11th Cir. 2014) (citing *United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006), to the effect that "despite an appeal waiver a defendant retains the right to contend that there were errors in the proceedings that led to the acceptance of his plea of guilty, and he may argue that the district court failed to satisfy the requirement that there is a factual basis for the plea" (internal quotations omitted)); *United States v. Chaney*, 568 Fed. Appx. 671, 674-75 (11th Cir. 2014) ("We respect the ruling of our colleagues in *Anaya-Medina*[, 558 Fed. Appx. 547, 549 (11th Cir. 2014)], as well as other Circuit Court opinions addressing similar issues, that a defendant can still challenge the sufficiency of the factual basis on which the district court accepted the guilty plea even in the face of a knowing and voluntary appeal waiver.").

Although, in limited circumstances, an appeal waiver may not be enforceable,

11

such circumstances do not exist here because Movant's challenge to the sufficiency of the factual basis for his plea fails, as shown below. Thus, not only has he failed to overcome the procedural hurdles noted above, which he acknowledges require him to make a colorable showing of his actual innocence, but he also has failed to overcome the hurdle created by the appeal waiver contained in his plea agreement. Movant entered his guilty plea with full knowledge of the charge against him, the facts supporting the charge and the consequences of his plea. (*See* Doc. 27). He admitted before entering his plea that he had transferred a child pornographic image to another person using Yahoo! Messenger. (*See id.* at 11-14). Because that transfer satisfies every reasonable assessment of what it means to distribute child pornography, his claim—that his plea was unknowing and involuntary due to an insufficient factual basis for his plea—fails.

### C. The Factual Basis for the Plea

The evidence shows, and Movant does not dispute, that an image depicting child pornography "had been received and sent" on Movant's computer using Yahoo! Messenger. (Doc. 28 at 5). Movant argues, however, that because "there was no actual evidence showing that the image was ever opened or 'received' by another user," he did not commit an act of distribution as defined by the Third Circuit in

12

*Husmann*. (*Id.* at 5, 8). But even if a Third Circuit opinion were binding precedent in this Court, which it is not, Movant misconstrues the import of the *Husmann* holding. In that case, the Third Circuit considered whether the defendant was guilty of distributing child pornographic images by placing them in a peer-to-peer file sharing folder on his computer when there was no evidence that anyone had uploaded or received those images onto another computer. The court stated that "placing files into a shared folder does not automatically transmit them to another computer; shared files do not leave a user's computer until another program user actually downloads them."[2] *Husmann*, 765 F.3d at 171.

The foregoing discussion reveals that the factual background for the *Husmann*

---

[2]The Third Circuit elaborated on the functioning of a peer-to-peer network as follows:

> File sharing programs, also known as peer-to-peer file sharing programs, enable computer users to share and receive electronic files, including images, videos, and audio files, with a network of other users. To exchange files, users' computers communicate directly with each other, rather than through central servers. Program users can search for files made available by other users, browse files made available by a specific user, and download files. Program users can also make their files accessible to others by placing their files in a designated folder that is available to the network of program users. Since communications take place between computers connected to the file sharing network and do not travel through a central server, placing files into a shared folder does not automatically transmit them to another computer; shared files do not leave a user's computer until another program user actually downloads them.

*Husmann*, 765 F.3d at 171 (citations omitted).

13

holding is different from the factual background here, where it is undisputed that the pornographic image at issue was sent from Movant's computer and was received on someone else's computer. In *Husmann*, the Third Circuit relied upon the holdings of "[s]everal circuits [that] have made clear that distribution occurs when pornographic materials *are actually transferred to* or downloaded by *another person*." *Id.* at 174 (emphasis added). The court held:

> Based on the ordinary meaning of the word "distribute," the other statutory provisions criminalizing child pornography offenses, and the decisions of our sister circuits, we hold that the term "distribute" in § 2252(a)(2) requires evidence that a defendant's child pornography materials were *completely transferred to* or downloaded by *another person*. Of course, knowingly placing child pornography in a shared folder on a file sharing network remains a criminal offense. It just isn't distribution.

*Id.* at 176 (citations omitted) (emphasis added). As noted above, in this case, the image at issue *was* actually and completely transferred to another person.

The Eleventh Circuit recently addressed the meaning of distribution in 18 U.S.C. § 2252A(a)(2), a statute with a description of the distribution of child pornography that is for all relevant purposes identical to the one contained in § 2252(a)(2), and held that the defendant could not be guilty of distributing child pornography because there was no evidence presented at trial that he had sent the images at issue to anyone other than

14

himself:

> We have not yet defined the term "distribute" for purposes of § 2252A(a)(2), and neither has Congress. We start here with its plain and ordinary meaning. *See Smith v. United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."); *United States v. Silvestri*, 409 F.3d 1311, 1333 (11th Cir. 2005) (explaining that when terms are not defined by statute, "[c]ourts must assume that Congress intended the ordinary meaning of the words it used") (quotation marks omitted). *The word "distribute" ordinarily means to deliver, give out, dispense, or disperse to others. See United States v. Probel*, 214 F.3d 1285, 1288 (11th Cir. 2000) (explaining, in the context of a guidelines enhancement for distributing child pornography, that "the term 'distribution' should be given its ordinary meaning of 'to dispense' or 'to give out or deliver'"); *see also* BLACK'S LAW DICTIONARY 508 (8th ed. 2004) (defining "distribute" as to "apportion," "deliver," or "disperse"); RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 572 (2d ed. 2001) (defining "distribute" as to "deal out," "disperse," or "pass out or deliver . . . to intended recipients") . . . . Implicit in the cited definitions is the notion that the item being distributed is delivered to someone other than the person who does the delivering. We do not commonly speak of delivering to ourselves things that we already have. Our pattern jury instructions make the point that: "To 'distribute' something means to deliver or transfer possession of it to someone else . . . ." 11TH CIR. PATTERN JURY INSTR. (CRIM.) 83.4A (emphasis added). That part of the pattern instructions was given to the jury in this case, without objection from either side.

*United States v. Grzybowicz*, 747 F.3d 1296, 1307-08 (11th Cir. 2015); *see id.* at 1309 ("Because it did not present any evidence that [the defendant] transferred child pornography to others or freely allowed them access to his computerized stash of

15

images, the government failed to establish 'distribution' within the meaning of § 2252A(a)(2)." (citation and internal quotations omitted)); *see also* 18 U.S.C. § 2252A(a)(2) (making it a crime to "knowingly receive[] or distribute[] any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer").

The Eleventh Circuit noted that "[o]ther circuits have reached similar conclusions with respect to the distribution element of § 2252A(a)(2), unanimously holding that a defendant 'distributes' child pornography within the meaning of the statute when he *either transfers it to another person or makes it accessible to others through a file-sharing website or peer-to-peer network.*" *Id.* at 1308 (emphasis added). The only arguable change that *Husmann* wrought, then, is that there is no longer *unanimous* agreement that proof that a defendant placed child pornographic images on a peer-to-peer network is *in itself* sufficient to support a conviction for distributing child pornography. But those are not the facts of this case, as even Movant acknowledges. (*See* Doc. 28 at 5). Therefore, even if Movant could establish the precedential value in this Court of a lone Third Circuit ruling, and even if he could overcome the procedural hurdles that he faces, he has failed to show that the facts

16

supporting his conviction for distributing child pornography were insufficient for that purpose. It is as if Movant were to argue that if he had sent a hard copy of a child pornographic image through regular mail rather than electronic mail, he could not be convicted for distributing that image unless the government showed that the image was not only received in the mailbox of another person but also that the recipient actually opened the item of mail and viewed the image. Movant has offered no case suggesting that the law of distribution of child pornography contains such a requirement, and the Court is not aware of any.

In sum, because the factual basis for Movant's plea remains intact and is sufficient to support his plea, Movant has failed to make a colorable showing that he is actually innocent of his crime of conviction. Movant thus has failed to overcome the procedural and time bars to his § 2255 unknowing-and-involuntary-plea claim, and, moreover, his appeal waiver remains valid and enforceable. *See Hildenbrand*, 527 F.3d at 474.

### III. <u>Certificate of Appealability</u>

A § 2255 movant must obtain a certificate of appealability (COA) before appealing the denial of a motion to vacate. 28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B). A COA may issue only when the movant makes a "substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted). A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir.) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)). Although *Slack* involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here. *See Jones v. United States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case). Because there is no reasonable argument that Movant has overcome the procedural and time bars to his § 2255 plea claim; shown that the appeal waiver in his plea agreement is unenforceable; or shown that he has a meritorious claim that his plea was unknowing and involuntary because there was not a sufficient factual basis to support it, a COA should not issue in this matter.

## IV.   Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DISMISS**

18

Movant's 28 U.S.C. § 2255 motion (Doc. 28) and **DENY** Movant a certificate of appealability.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this 3rd day of August, 2015.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE